GOWAN v. GENTRY.

1.  Assignees of a legacy brought action against the executors alleging an
    amount in their hands more than sufficient to pay this legacy and de-
    manding judgment therefor. The executors made default. After ref-
    erence had and report made, the judge ordered defendants to pay to
    plaintiffs the amount due to them out of this legacy, with costs. Judg-
    ment was entered up on a blank form which was imperfectly filled up,
    and signed, but not sealed, by the clerk. Execution *de bonis testatoris*
    was issued, and two years later an *alias* execution *de bonis propriis*,
    under which a levy was made upon the individual property of the exe-
    cutors, which they, by this action, sought to enjoin. *Held*, that the
    irregularity in the judgment formula might be corrected by amend-
    ment. MR. CHIEF JUSTICE SIMPSON, *dissenting*.

2.  Was the second execution *de bonis propriis* sufficiently supported by
    the order of the Circuit Judge without regard to the judgment formula,
    and without a second action establishing a *devastavit?* MR. JUSTICE

24 –32

McGowan thought it was, Mr. Chief Justice Simpson thought it was not, and Mr. Justice McIver reserved his opinion.

Before Hudson, J., Spartanburg, April, 1889.

Action by S. Gowan, T. V. Gowan, and W. E. Gowan against L. M. Gentry, sheriff, and others, commenced in July, 1888. The opinion states the case. The judgment formula and executions directed to be inserted were as follows:

### JUDGMENT.

November 12th, 1885. The summons in this action having been personally served on　　　　　, the defendant, on the day of　　, 1885, and no answer or demurrer to the complaint having been received by the plaintiff attorney, as required by the summons in this action, and the said case having been duly filed and docketed, and called in open court, as provided by law, during the　　　term of this court, and an order for judgment having been endorsed on the complaint in this action, and signed by Mr. Justice Witherspoon, the presiding judge.

Now, on motion of　　　　　, plaintiff attorney, it is hereby adjudged, that　　　　　, the plaintiff, recover of two hundred dollars, the amount claimed, and interest with sixty-nine and 50–100, costs and disbursements, amounting in the whole to the sum of two hundred and sixty-nine 50–100 dollars.

Plaintiff's Attorneys.

Judgment signed and entered November 12th, 1885.

F. M. TRIMMIER, Clerk.

This paper has no seal of court on it. Execution and *alias* execution were as follows:

State of South Carolina,
To the Sheriff of the County of Spartanburg. } Greeting.

Whereas judgment was rendered at the October term of the Court of Common Pleas for Spartanburg County, one thousand eight hundred and eighty five, in an action in the Court of Common Pleas for Spartanburg County, between Edwin H. Bobo and J. W. Carlisle, as copartners practising law under the firm name of Bobo & Carlisle, and J. S. R. Thomson, plaintiffs, and

Simeon Gowan, Thos. Gowan, and Wm. Gowan, as executors of
William Gowan, deceased, and N. R. Lewis, defendants, in favor
of said plaintiffs against the said defendants, for the sum of two
hundred dollars, as appears to us by the judgment roll, filed in
the office of the clerk of the Court of Common Pleas, County of
Spartanburg.

And whereas the said judgment was docketed in your county
on the 12th day of November, in the year one thousand eight
hundred and eighty-five, and the sum of two hundred dollars is
now actually due thereon, with interest from twenty-third Oct.,
1885, together with sixty-nine and 50–100 dollars costs.

Therefore we command you, that you satisfy the said judgment
out of the personal property of the said judgment debtor, belong-
ing to the estate of Wm. Gowan, deceased, within your county;
or if sufficient personal property cannot be found, then out of the
real property in your county belonging to such judgment debtor
on the day when the said judgment was so docketed in your
county, or at any time thereafter, in whose hands soever the same
may be, and duly return this execution according to law, to the
clerk of the Court of Common Pleas for the county of          .

Witness F. M. Trimmier, clerk of said court, at Spartanburg
C. H., the fifth day of January, one thousand eight hundred and
eighty-five.                       DUNCAN & SANDERS,
                                        Plaintiff's Attorneys.
     F. M. Trimmier, Clerk.
          [Seal.]

State of South Carolina,   } Greeting.
To the Sheriff of the County of Spartanburg. }

Whereas judgment was rendered at the October term of Court
of Common Pleas, one thousand eight hundred and eighty-    ,
in an action in the Court of Common Pleas, between Edwin H.
Bobo and J. W. Carlisle, as copartners practising law under the
firm name of Bobo & Carlisle, and J. S. R. Thomson, plaintiffs,
and Simeon Gowan, Thos. Gowan, and Wm. E. Gowan, as exe-
cutors of Wm. Gowan, deceased, and N. R. Lewis, defendants,
in favor of said plaintiffs against the said Simeon Gowan, Thos.
Gowan, and Wm. E. Gowan, and N. R. Lewis, for the sum of
two hundred dollars, as appears to us by the judgment roll, filed

in the office of the clerk of the Court of Common Pleas, County of Spartanburg.

And whereas the said judgment was docketed in your county on the 23rd day of October, in the year one thousand eight hundred and eighty-five, and the sum of two hundred dollars is now actually due thereon, with interest from 23rd of October, 1885, together with sixty-nine and 25–100 dollars costs.

Therefore we command you, that you satisfy the said judgment out of the personal property of the said judgment debtor within your county; or if sufficient personal property cannot be found, then out of the real property in your county belonging to such judgment debtor on the day when the said judgment was so docketed in your county, or at any time thereafter, in whose hands soever the same may be, and duly return this execution, according to law, to the clerk of the Court of Common Pleas for the County of Spartanburg.

Witness, F. M. Trimmier, clerk of said court, at Spartanburg C. H., the sixth day of December, one thousand eight hundred and eighty-seven,　　　　DUNCAN & SANDERS,
　　　　　　　　　　　　　　　　　　Plaintiff's Attorneys.

F. M. TRIMMIER, Clerk.
　　By T. R. TRIMMIER, D. C.
　　　　[Seal.]

*Messrs. Bomar & Simpson*, for appellants.

*Messrs. Duncan & Sanders* and *Nicholls & Moore*, contra.

March 24, 1890.　The opinion of the court was delivered by

MR. JUSTICE McGOWAN.　On July 16, 1885, Bobo & Carlisle and J. S. R. Thomson instituted suit against Simeon Gowan, Thomas Gowan, and W. E. Gowan, as executors of William Gowan, deceased, and N. R. Lewis, alleging that in February, 1881, the defendant, N. R. Lewis, executed to them an assignment of her interest (to the extent of $200) in the estates of her father, Newton Gowan, and of her grandfather, William Gowan, for professional services rendered in defending her husband in an indictment against him for murder, of which he was acquitted;

that the aforesaid executors of the will of William Gowan have in their hands, after paying the debts, the sum of $346, as the share of the said N. R. Lewis, but that they refused to pay the plaintiffs the aforesaid sum of $200, or any part of the share of said N. R. Lewis; and praying judgment for the $200, and that the executors should be restrained and enjoined from paying out the share of N. R. Lewis, until the further order of the court. Judge Wallace granted the injunction.

The executors were regularly served, but made no answer. Judgment by default was taken against them; and the case was referred to a special referee (E. E. Bomar, Esq.), who reported that the facts alleged in the complaint were true, and "that Simeon Gowan, Thomas Gowan, and W. E. Gowan, as executors of William Gowan, deceased, have in their hands about the sum of $346 of the share of N. R. Lewis, and that the said plaintiffs are entitled to receive from said defendants, as executors of the will of William Gowan, deceased, the sum of $200 of said share." Judge Witherspoon confirmed the report and made it the judgment of the court. "It is further ordered and adjudged, that the defendants, Simeon Gowan, Thomas Gowan, and William Gowan, as executors of William Gowan, deceased, do pay, out of the share or interest of the defendant, N. R. Lewis, in the estate of the said William Gowan, deceased, first, the costs and disbursements of this action; and, second, the plaintiffs herein the sum of two hundred dollars," &c.

Thereupon the plaintiffs, on November 12, 1885, caused to be entered as a judgment a paper signed by the clerk, but without his seal, which seems to have been a printed form, with the blanks for the term of the court, the names of the parties, &c., not filled out. On January 5, an execution was issued, with the signature and seal of the clerk, commanding the sheriff "to satisfy the said judgment out of the personal property of the said judgment debtor belonging to the estate of William Gowan, deceased," &c. This execution was returned; and on December 6, 1887, another was issued by the clerk, commanding the sheriff to satisfy said judgment for $200 out of the property of said judgment debtor in your county, &c. (The judgment formula and both executions should appear in the report of the case.)

Under this last execution *de bonis propriis*, the sheriff levied upon the individual property of the aforesaid executors of Wm. Gowan, deceased, whereupon they instituted this action against the sheriff, Gentry, and the plaintiffs in the first action and N. R. Lewis, to enjoin the sale; and alleging that said pretended judgment and executions, and all proceedings thereunder, were defective, irregular, and void, prayed that they should be set aside and cancelled of record. N. R. Lewis did not answer, but the other defendants made vigorous defence, giving a history of the first proceeding as above stated, and insisting that they were legal and valid. Judge Hudson, who heard the case, held "that the plaintiffs are bound by the judgment which they now seek to set aside. They were duly served with summons in the action in which said judgment was rendered. They were all *sui juris*, and deliberately and knowingly paid no attention to the summons, and it is now too late to seek to come in and litigate the question settled in said cause. The action in which the judgment is now assailed, was to recover part of a legacy. The court has found that at the time of rendition of said judgment, they (the executors) had this legacy in their hands, and has adjudged that they pay to the plaintiffs in said action the amount of their claim," &c. He also held that the defects in the judgment were mere irregularities, which could be corrected at any time, and if not, that Judge Witherspoon's decree alone would support the last execution *de bonis propriis*, which was the correct one.

From which decree the plaintiffs appeal, and charge error in the Circuit Judge: "1. In holding that plaintiffs are estopped by the record in the case of Thomson and others against these plaintiffs, as executors, defendants, from prosecuting this action. 2. In holding that the defendants had the right, under said judgment, to issue an execution against these plaintiffs individually for collection of the same. 3. In holding that said judgment creditors had the right to issue these executions under the order of Judge Witherspoon without any formal judgments. 4. In holding that the pretended judgment filed in the clerk's office was not necessary, but if it was, it was sufficient. 5. In holding that the executions issued under said pretended judgment were

good and regular, and that the defendant had the right to proceed with the sale of plaintiff's land thereunder."

It seems that the proceedings in the first action were perfectly regular—certainly down to the decree of Judge Witherspoon, October 23, 1885, and therefore that decree finally and conclusively adjudged against the defaulting executors every matter necessarily involved in that issue. It was as to them *res adjudicata*. But it is urged that the paper judgment and the two executions subsequently issued to carry that judgment into effect, were so irregular and defective as to make them absolutely void and incapable of being executed. Exceptions 1, 2, and 5 make the point, substantially, that the judgment being against the defendants, as executors of William Gowan, deceased, the execution could only issue against them *de bonis testatoris*, and that before an execution could issue against them *de bonis propriis*, a second action was necessary, suggesting a *devastavit*.

We think this view overlooks the fact that the proceeding is a suit in equity for the payment of a legacy (or part of it). All the authorities agree that there is a difference as to the remedies against executors in equity and at law. When executors are sued at law for a debt of their testator, the first action is merely to establish the debt, and if proper pleas are interposed, the judgment is only *de bonis testatoris*, but the execution runs *de bonis propriis* as to the costs: and then before recovery of the debt, it is necessary by some second proceeding to establish the existence of assets, or, as it is called, a *devastavit*. In New York this second proceeding is before the "surrogate" for an account, while in this State it is by a second action, suggesting a *devastavit*. See *Trimmier* v. *Thomson*, 19 S. C., 247. But when the suit is in equity for a legacy and in that suit, there is an accounting, in which it appears that there are assets in the hands of the executors, then there is no necessity for the "surrogate" or a second action or anything of the kind. The question of assets has already been determined.

Now, in this case assets were established, first, by the failure of the executors to appear and plead *plene administravit*, which is a conclusive admission of assets; and, second, assets were actually found by the referee, and confirmed by the court. For

what purpose could there be a second proceeding of any kind? The matter of assets was conclusively adjudged against the executors. The decree of Judge Witherspoon did direct the executors to pay the $200, as executors ; but as he had just decided that those executors had assets in their hands, he, of course, *ex necessitate,* intended the execution to be *de bonis propriis,* the word "executors" being merely *descriptio personarum.* An execution in which the word "executor" or "administrator" is added to the defendant's name, without anything further to indicate that it is against him in his representative capacity, may be treated as against him personally, and levied on his property. *Tinsley* v. *Lee,* 51 Ga., 482.

We think the last execution rightly issued against the executors *de bonis propriis.* They had allowed the complaint to be taken *pro confesso* against them, and that was the admission of assets. In discussing the remedies against executors in equity, Mr. Williams says : "If the plaintiff's demand be uncontroverted or proved, he is entitled to immediate payment, without taking the account. * * The general rule is, that the admission of assets by an executor or administrator can never be retracted in a court of equity, unless a case of mistake is most clearly established." 3 Wms. Exors., p. *2049. The whole doctrine was thus condensed by Judge O'Neall, in the case of *Ford* v. *Administrator of Rouse,* Rice, 220 : "In this State a *devastavit* can only be established against an executor or administrator : (1) by establishing the testator's debt by matter of record (*i. e.,* a judgment recovered against the executor or administrator *de bonis testatoris*). (2) Assets admitted by the defendant's plea, confession, or default, or found by the verdict of a jury on and against the plea of *plene administravit* generally, or *praeter ;* and (3) that the defendant has wasted such assets. The only other mode of reaching an administrator personally [that was the case of an administrator] is by an account before the ordinary or in equity, preparatory to a suit on his bond," &c. See *De La Howe* v. *Harper,* 5 S. C., 472.

The other exceptions relate to the defects and clerical irregularities in the form of the judgment and the executions. The court, in the interest of justice, exercises the power of amend-

ment very liberally, particularly when the rights of the parties have been adjudicated, and the irregularities appear in process issued to enforce the judgment. Mr. Freeman, who is the authority on judgments and executions, in section 63 of his "Executions," cites with approbation our own case of *Bordeaux* ads. *The Treasurers* (3 McCord, 144), where Judge Colcock said: "When we advert to the doctrine of amendments, and the cases which have been decided on that subject, it will be perceived that the object of the whole system is to provide a remedy for the casual omission or negligence of the different officers of courts; in a word, to enable the party to do that which the law and facts of the case would have authorized or did require the officers to have done. The decisions on the subject are so numerous, and amendments so common, and I may almost say unlimited, that the difficulty is in selecting such cases as seem most directly to apply," &c. See *Huggins* v. *Oliver*, 21 S. C., 155. It was held in *Clark* v. *Melton* (19 S. C., 507), "that the judgment formula does not constitute the judgment of the court, nor does the dating or signing by the clerk with his official signature add anything to its intrinsic character. The judgment issues from the court, not from the attorneys or the clerk. It precedes the formula and is authority upon which it is prepared, but the formula constitutes no part of the judgment. It is only evidence of the existence of the judgment, and entitles the plaintiff to have it enforced." We cannot say that the Circuit Judge committed error in refusing to declare the proceedings void.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER. I concur in the result, because, even if the decree of Judge Witherspoon was not such as could authorize judgment and execution for the debt against the Gowans individually, yet it did for the costs, and that would be sufficient to sustain the judgment appealed from. But I do not wish to be understood as intimating any opinion as to whether Judge Witherspoon's decree authorized judgment and execution for the debt against the Gowans individually because, owing to the unusual pressure of the business of the present term, I cannot now spare

the time from other and more important official duties, to investigate that question as fully as would be necessary to enable me to form a satisfactory opinion. As to the irregularities in the judgment and execution, they may be rectified by amendment, under the authority of *Huggins* v. *Oliver*, 21 S. C., 147, and the cases therein cited.

MR. CHIEF JUSTICE SIMPSON, *dissenting.* I have no doubt that the plaintiffs are entitled to recover the legacy which they are seeking to recover, and which, doubtless, by proper proceedings, they will be able to recover ultimately. But I am unable to see how in this case, which was an action against the defendants as executors, and in which a judgment was obtained against them as executors, entered up against them as executors, and *fi. fa.* issued in the same way, that said *fi. fa.* could be withdrawn and a second one issued against the defendants, as individuals, *de bonis propriis*, without any new or further proceedings. True, the defendants, under the original *fi. fa.*, were liable for the costs *de bonis propriis;* but the present *fi. fa.*, is not for the costs. It demands the $200—amount of the legacy. I cannot concur.

Judgment affirmed.