## 9826

### ROWELL *ET AL.* v. HYATT.

1. WILLS—CONSTRUCTION—NATURE OF ESTATES CREATED—LIFE ESTATES.— A will devising land to sons of the testator, and providing that the devise to such sons and made only for their use and benefit during their natural lives, and not at their absolute disposal, or to become subject to sale for their debts, but at their death to go to their legitimate heirs, the children of their bodies, created a life estate in a son, with remainder to his children; the testator having defined "heirs" as meaning children.

2. APPEAL AND ERROR—REVIEW—MATTERS NOT PRESENTED BELOW.—In an action by remaindermen, under a will to recover possession of land, defendant's contention that he and those under whom he claimed had a right to rely upon the recorded copy of the will, which was said to be different from the original; and that they were purchasers for value, without notice, could not be considered, where defendant did not allege or prove the facts necessary to establish this defense.

3. ESTOPPEL—ACCEPTANCE OF DEED—DENIAL OF TITLE.—The acceptance of a deed from a devisee by his grantee, who was also the testator's administrator with the will annexed, estopped him to deny that he had assented to the devise.

4. ESTOPPEL—PERSONS ESTOPPED BY DEED—REMOTE GRANTEES.—Purchasers, under the administrator, were also estopped to deny that

the administrator had assented to the devise, the acceptance of the deed being a matter of record, affecting their title of which they were bound to take notice.

5. Executors and Administrators—Judgments—Enforcement—Sale of Land.—A devisee's possession of the devise, with the *bona fide* assent of the executor, ousts the right of creditors to sell the devise under a judgment obtained against the executor alone after such assent and possession.

6. Executors and Administrators—Assent to Devise—Effect.—An assent to a devise of a life estate by the administrator with the will annexed inured to the benefit of the remainderman.

7. Execution—Title of Purchaser at Execution Sale—Burden of Proof.—One claiming title to land, under an execution sale, must prove a judgment and execution authorizing the sale of the interest which he claims.

8. Executors and Administrators—Judgments—Enforcement—Sale of Land.—To authorize a sale of the property of a decedents's estate, when the heirs or devisees have not been made parties, the judgment must be recovered upon a debt or liability of the decedent, and must be against his personal representative *de bonis testatoris,* and the execution must conform to the judgment.

9. Executors and Administrators—Judgments—Enforcement—Sale of Land.—A substantial variance from the correct form in such cases is not treated as a mere irregularity, but as matter of substance, which vitiates the sale.

10. Executors and Administrators—Judgments—Enforcement—Sale of Land.—A sheriff's deed recited an execution, commanding him out of the lands, etc., of J., administrator with the will annexed of W., to levy a specified sum, for which persons named recovered a judgment against J., administrator, that he had levied on certain land or the interest of J., administrator therein, and sold it, and that the bid was transferred to J. It purported to convey all of such tract of land, with the interest of J. therein, together with all appurtenances and all the estate, title and interest therein of J., administrator of W., deceased. *Held* that, assuming the judgment and execution having been lost, that the recitals of the deed might be relied upon to prove them, such recitals did not prove a judgment, and execution authorizing a sale of the property of W., as the words "administrator," etc., were merely descriptive, and the purchaser acquired only the individual interest of J., who had purchased the life estate devised by W.

11. Executors and Administrators—Contracts—Power to Bind Estate.—An administrator or executor has no power to contract debts, which will bind the estate, except by special authority, which will not be presumed.

12. Executors and Administrators—Judgment—Sale of Land.—In an action by remaindermen, under a will, to recover possession of land from one claiming under a sheriff's deed, reciting a judgment and execution against the administrator with the will annexed, a witness testified that after the testator's death, a survey was made and the lines of the several devisees located, and that the life tenant of the land in question took possession of the tract devised to him, and lived on it for two or three years. *Held,* that where this testimony was not only uncontradicted, but strongly corroborated by undisputed facts and circumstances and the inferences to be drawn from the records, so that a finding to the contrary would have been without evidence to support it, a verdict was properly directed for the remaindermen on the ground that the life tenant had such actual and exclusive possession before the judgment was obtained as ousted the right of the judgment creditor to sell the land under a judgment against the administrator.

13. Executors and Administrators — Judgments — Enforcement—Sale of Land.—Where an administrator, with the will annexed, assented to a devise, and the life tenant took actual and exclusive possession, before a judgment was obtained against the administrators, as such, the life tenant's previous conveyance to the administrator did not warrant a sale of the land under such judgment.

14. Remainders—Actions by Remainderman—Limitation.—Code Civ. Proc. 1902, sec. 134, providing that no action shall be commenced in any case for the recovery of real property against a person in possession, under claim of title by virtue of a written instrument, unless the person claiming, his ancestor or grantor, was actually in possession within 40 years, does not apply unless the defendant has been in possession 40 years, after the accrual of the cause of action, and the cause of action to remaindermen to recover possession from those claiming under an execution sale of the life estate did not accrue until the death of the life tenant.

Before Prince, J., Dillon, Spring term, 1917. Affirmed.

Action by J. D. Rowell and others against D. H. Hyatt and others. Judgment for plaintiffs, and defendant named appeals.

This is an action by plaintiffs, children of John Rowell, to recover possession of a tract of land devised in the will of their grandfather, William Rowell, in terms as follows:

"Item First. I give to my wife, Lecia, and bequeath to her all my personal estate, after the payment of my debts of every name and kind except so much as I shall hereafter

dispose of in this instrument during her natural life and at her absolute disposal with the exceptions hereinafter made for the benefit of my daughters. I also give and bequeath to my said wife the use of my plantation and one hundred and twenty acres of land including it during her natural and at her death the said plantation and one hundred and twenty acres including it, I give and bequeath to my son, Jesse, subject to the provisions hereinafter made. I give and bequeath to my son, James, sixty acres of land in the fork of Little Cypress and off of the southwestern end of my land subject to the provisions hereinafter made. I give and bequeath to my son, Jeremiah, eighty acres of my land including the house and clearing where he now lives, subject to the provisions hereinafter made. I give and bequeath to my son, David Rowell, eighty acres of my land along the south side of it adjoining David C. Rowell's land and to extend to the land which I give to my son, Jeremiah, subject to the provisions hereinafter made. I give and bequeath to my son, John, ninety acres of my land along the Surles land, from what I give my son, Jeremiah, to Little Pee Dee River subject to the provisions hereinafter made, and if my sons cannot agree on laying out each one's share then my will is that each one choose a man to divide and lay off for them, my wife choosing for my son, Jesse, all of whom shall be disinterested freeholders and the division made by them shall be a final adjustment of the division between them, these men having in view the interest of each so as to mark out the lines dividing so as to give each justice. But the bequest of the above named lands to my several sons is made only for their use and benefit during their natural lives and not at their absolute disposal or to become subject to sale for any debt which they contract, but at their death to go to and be the lawful property of their legitimate heirs, the children born of their bodies, and in the event that any one of them or more of them should die without any legitimate issue the lands given to him or them shall become the

absolute property of my daughters, Elizabeth and Sarah, to be equally divided between them."

The defendant, Hyatt, claimed title under the deed from Ellie Godbold, sheriff, to Jeremiah Rowell, dated March 2, 1857, the recitals of which are stated in the dissenting opinion, and also under a deed from John Rowell, father of plaintiffs, to Jeremiah Rowell, dated April 2, 1856. At the close of the testimony, Judge Prince, on Circuit, directed a verdict for plaintiffs. The defendant, Hyatt, appeals.

*Messrs. J. W. Johnson* and *Gibson & Muller,* for appellant.

*Messrs. Sellers & Moore,* for respondents.

November 9, 1917.

The opinion of the Court was delivered by Mr. Justice Hydrick.

The devise to John was a life estate, with remainder to his children. Testator defined the word "heirs," as he used it, to mean "children." That obviates the necessity for construction, which would only confuse what he made plain, to wit, his intention that John should have only a life estate, with remainder to his children.

Appellant contends, however, that the record of the will in the "will book" was different from the original, in that testator's definition of the word "heirs" was omitted, and that, as purchasers for value without notice, he and those under whom he claims had the right to rely upon the record copy of the will. It is sufficient answer to that contention to say that appellant neither alleged nor proved the facts necessary to establish that defense. *Lupo v. True,* 16 S. C. 579; *Merck v. Merck,* 95 S. C. 328, 78 S. E. 1027; *Carr v. Mouzon,* 93 S. C. 161, 76 S. E. 201, Ann. Cas. 1914c, 731.

As Jeremiah was administrator with the will annexed, acceptance by him of the deed from John was inconsistent

with the idea that he still had possession of the land for pur-
poses of administration.    Therefore it estopped him,
and, as it was matter of record affecting his title of
which purchasers under him were bound to take
notice, it estopped them, to deny that he assented to the
devise to John.    A devisee's possession of the devise, with
*bona fide* assent of the executor, ousts the right of creditors
to sell the devise under a judgment obtained against the
executor alone, after such assent and possession.    *Harley
v. Bates,* 4 S. C. L. (2 Brev.) 419; *Thompson v. Schmidt,*
21 S. C. L. (3 Hill) 156, 165; *Alexander v. Williams,* 20
S. C. L. (2 Hill) 522; *Green v. Iredell,* 31 S. C. 588, 10 S.
E. 545, 18 Cyc. 599.    And these authorities show that
assent to the devisee of a life estate inures to the benefit of
the remaindermen.

Nevertheless, as we shall see later, as Jeremiah took noth-
ing by the deed from John, except John's life estate, which
he and his grantees enjoyed, it is of little or no consequence
whether he assented to the devise or not.    But defendant
had the right to rely upon the sheriff's deed as a distinct and
independent source of title.    It becomes necessary, there-
fore, to determine what interest that deed conveyed.

One who claims title to land under an execution sale must
prove a judgment and execution which authorize the
sale of the interest which he claims.    *Sheriff v. Wel-
born,* 14 S. C. 480; *Bonham v. Bishop,* 23 S. C. 96;
*Parr v. Lindler,* 40 S. C. 193, 18 S. E. 636.

The form of judgment and execution against an adminis-
trator or executor which is necessary to authorize sale of
the property of decedent's estate, when the heirs or devisees
have not been made parties, has been determined and
pointed out in many cases.    *Hubbell v. Fogartie,* 19
S. C. L. (1 Hill) 167, 26 Am. Dec. 163; *Trimmier v.
Thomson,* 19 S. C. 247; *Huggins v. Oliver,* 21 S. C. 147;
*Gowan v. Gentry,* 32 S. C. 369, 11 S. E. 82, 18 Cyc. 1075,
1077.    The judgment must be recovered upon a debt or lia-

bility of decedent, and it must be against his personal representative *de bonis testatoris,* etc.    And the execution must conform to the judgment.    A substantial variance from the correct form in such cases is not treated as a mere irregularity, but as matter of substance, which vitiates the sale; for as said in *Small v. Small,* 16 S. C. 64: "Forms must be exact when the right is claimed to sell land without making the owner a party."

There is no evidence that the judgment under which the sale was made was recovered upon a debt of William Rowell, the testator.    There is no evidence that there was any judgment or execution, except the recitals in the sheriff's deed.    But, assuming, without deciding, that, when the judgment and execution have been lost, the recitals of the sheriff's deed may be relied upon to prove them (but *Sheriff v. Welborn, supra,* seems to hold otherwise), and giving these recitals the utmost effect, they utterly fail to prove a judgment and execution which authorized the sale of the property of Wiliam Rowell's estate.    They are sufficient to prove only a judgment and execution against "Jeremiah Rowell, administrator," etc., of that estate.    It is needless to cite authority that an administrator or executor has no power to contract debts which will bind the estate, except by special authority, which will not be presumed.

In his deed, the sheriff recites an execution "commanding me of the goods, chattels, houses, lands, and other hereditaments, and real estate *of Jeremiah Rowell, administrator, with will annexed of William Rowell* to levy," etc., the sum recovered *"against the said Jeremiah Rowell, administrator,"* and that he levied upon a certain tract of land, *or the interest of the said Jeremiah Rowell, administrator, in a certain tract"* described.    He then recites the sale to E. T. Stackhouse, the transfer of his bid to Jeremiah Rowell, and the conveyance to the latter of "all that certain tract or parcel of land on which the said Lucy Rowell lives

*with interest of Jeremiah Rowell therein,"* situate, etc., "together with all and singular the members and appurtenances thereunto belonging, *and all the estate, title, and interest which the said Jeremiah Rowell, administrator of the estate of William Rowell, deceased, of right had in and to the same."* The italicized parts of the deed fail to show that the judgment was recovered upon a debt of William Rowell, or that it was adjudged that the recovery should be out of his estate. The judgment and execution recited were against Jeremiah Rowell, individually, the words "administrator," etc., added to his name, being merely *descriptio personæ. Tobin v. Addison,* 33 S. C. L. (2 Strob.) 3; *Beazley v. Dunn,* 42 S. C. L. (8 Rich.) 345; *Small v. Small,* 16 S. C. 64; *Huggins v. Oliver,* 21 S. C. 147; *Gowan v. Gentry,* 32 S. C. 369, 11 S. E. 82, 18 Cyc. 880, 881, 1075-1077. It follows that the purchaser at the sheriff's sale acquired only the individual interest of Jeremiah Rowell in the land described, which, so far as the tract devised to John was concerned, was only the life estate that John had conveyed to him.

This conclusion makes it unnecessary to decide whether the evidence showed so conclusively that John had such actual and exclusive possession of the tract devised to him before the judgment was obtained as would oust the right of the judgment creditor to sell the land under that judgment that the Court might direct the verdict on that issue. Nevertheless, it may be said David Rowell testified that, after testator's death, a survey was made and the lines of the several devisees were located, and John took possession of the tract devised to him, and lived on it two or three years. That testimony is not only uncontradicted, but it is strongly corroborated, by the undisputed facts and circumstances and the inferences to be drawn from the indisputable records, so that a finding to the contrary would have been without any evidence to support it.

Therefore, even if that were an issue in the case, the verdict was properly directed.

The appellant contends that even if John was in such actual and exclusive possession before the judgment was obtained as would have prevented a sale of the land under it, nevertheless, when he conveyed his interest to Jeremiah, the latter was then in possession both as administrator and as devisee, and, under the ruling in *Smith v. Byers,* 102 S. C. 215, 86 S. E. 481, the fee might have been sold under the judgment against him. But, in *Smith v. Byers,* the possession of the executor had never been changed. He took possession originally both as executor and as life tenant under the will; and it was held, nothing appearing to the contrary, that it would be presumed— not necessarily, and as a matter of law, but as a matter of fact—that he was still holding the possession for the purposes of administration, when the judgment was obtained against him, especially as the judgment was against him both individually and as executor upon an obligation of his testator. This case is differentiated by the facts. Appellant's contention overlooks the legal effect of an assent by the executor to a legacy or devise and possession taken under it. The authorities cited above show that, once it is given *bona fide,* it cannot be recalled. It would be more consonant with justice and equity and authority to hold in this case that, when the executor bought the land of his testator at sale under execution against himself upon a debt which it was his duty to pay, he became a constructive trustee of the legal title, if that had been conveyed, for the benefit of the remaindermen. 18 Cyc. 287, 349, 769.

The remaindermen are not barred by the statute of limitations. They had no cause of action, until the death of the life tenant. *Rice v. Bamberg,* 59 S. C. 507, 38 S. E. 209, and cases cited. The provisions of section 134 of the Code of Civil Procedure are not applicable,

unless a defendant has been in possession 40 years after the accrual of a cause of action.

Judgment affirmed.

Messrs. Justices Watts, Fraser and Gage concur in the opinion of the Court.

Mr. Chief Justice Gary, *dissenting.* Some time after the death of the testator, I. T. and W. Stackhouse, as executors, recovered judgment against Jeremiah Rowell, as administrator *cum testamento annexo* of William Rowell. The judgment roll, after search, could not be found among the records, *and there was no testimony showing when it was recorded.* On the 2d of March, 1857, the sheriff executed a deed purporting to convey to Jeremiah Rowell the lands of William Rowell, including the tract in dispute, which contains the following recital:

"Whereas, by a writ of *fieri facias,* issued out of the Court of Common Pleas for the district of Marion; tested the 28th day of March, 1856, and returnable according to law, to me directed, and lodged in my office on the 10th day of April, 1856, commanding me of the goods, chattels, houses, lands, and other hereditaments, and real estate of Jeremiah Rowell, administrator with the will annexed of William Rowell, to levy the sum of sixty dollars and sixty-one cents, debt and costs, which I. T. and W. Stackhouse, executors, the plaintiff, by the judgment of the said Court at Marion, lately recovered against the said Jeremiah Rowell, administrator, I have levied upon a certain tract, piece or parcel of land, or the interest of the said Jeremiah Rowell, administrator, in a certain tract in the district of Marion aforesaid, hereinafter more particularly described."

After the lapse of 20 years it will be presumed that there was a valid judgment. *Corbett v. Fogle,* 72 S. C. 312, 51 S. E. 884.

Through successive conveyances from Jeremiah Rowell to his grantees, the land came into the possession of the

defendant, D. H. Hyatt, who claims to be the owner thereof. None of the remaindermen, nor those claiming under or through them, have ever been in possession of the 'land. Conceding that the remaindermen were not made parties to the proceedings, under which the land was sold, it by no means follows that they were not concluded by said judgment. The rule is thus stated in *Huggins v. Oliver*, 21 S. C. 159, by Associate Justice McIver (afterwards Chief Justice) :

"It seems to us that the rule to be deduced from the foregoing cases is this : That while, as a general proposition, it is true that lands of an intestate may be sold under a judgment recovered against the administrator, upon a debt of the intestate, yet if the lands have passed into the actual and exclusive possession of the heirs before the judgment has been recovered, and before any lien has thus been fixed upon them, they can no longer be sold under such judgment, and can only be reached by the usual proceedings to subject real estate, in the hands of the heir, to the payment of the debts of the ancestor, * * * to which proceedings the heir would, of course, be a necessary party."

This language was quoted with approval in *Brock v. Kirkpatrick*, 60 S. C. 322, 38 S. E. 779, 85 Am. St. Rep. 847. In the last mentioned case, the Court, in discussing the proposition that the exclusive possession of the heirs, and acts of ownership exercised by them, protected their inheritance from levy and sale, under a judgment and execution against the personal representative, said:

"This does not mean that the mere fact of actual and exclusive possession in the heir will prevent the application of the rule in D'Urphy's case, 3 S. C. L. (1 Brev. 289). Such a construction would amount to a practical abrogation of the rule; for, as was pointed out by Mr. Chief Justice Moses in *Rogers v. Huggins* (6 S. C. 377) : 'In the very large proportion of the instances in this State (and the case before us presents one) they, upon whom the inheritance is

cast, are in possession at the very moment of the death of the ancestor, for in nine cases out of ten, they are members of his own household.' "

It cannot be successfully contended that the said proceedings were not binding upon the remaindermen, by reason of the fact that there was a division of the property among the devisees before the sale. In the first place, the testimony does not show when the judgment was recovered; and, in the second place, the testimony does not show when the division was made, or whether the possession was such as to protect the land from levy and sale, without making the heirs parties to an action for that purpose. *The inferences from the facts were to be drawn by the jury, and not by the presiding Judge.*

Nor can it be urged that the judgment was not in proper form, in that it was against Jeremiah Rowell, as an individual, and not in his representative capacity. This would constitute a mere irregularity, and could be cured at any time by amendment, even after a sale under the judgment, as shown by the case of *Carroll v. Tompkins,* 14 S. C. 223, in which the Court says:

"Even before the adoption of the Code, it was within the jurisdiction and the constant practice of the Court to amend its own proceedings and orders, especially in cases of mere clerical mistake as to form. As was said by the Court, in the case of *Hubbell v. Forgartie et ux.,* 8 S. C. L. (1 Mill) 169 (26 Am. Dec. 163): 'It is every day's practice to permit judgments and executions to be amended, according to the right of the case, even after a sale under execution. If authority be necessary to sustain this practice, it will be found in the case of *Hancock v. Proud,* 1 Sand. 336, note 10, in which it is said: "But if the judgment be entered *de bonis propriis,* instead of *de bonis testatoris vel si non,* etc., it is considered as a mere clerical mistake, which the Court below will amend on motion, even after the record has been removed by error and argument in the Court of Errors " ' "

Even if the judgment was voidable, it could not be attacked collaterally. *Sanders v. Price,* 56 S. C. 1, 33 S. E. 731.

For these reasons I dissent.